# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ALEX MILES, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | Civil Action No. 4:25-cv-525 |
| | § | Judge Mazzant |
| CITY OF FRISCO, TEXAS and | § | |
| BRENNA BEARDEN, individually, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Brenna Bearden's Second Motion to Dismiss (Dkt. #16) and Defendant City of Frisco's Second Motion to Dismiss (Dkt. #17) (collectively, the "Motions"). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds the Motions should be **GRANTED**.

## BACKGROUND

### I.    Factual Background

This case arises from the alleged wrongful search, arrest, and prosecution of Plaintiff Alex Miles ("Plaintiff") (Dkt. #14). Plaintiff claims to have been a victim of various civil rights violations at the hands of the City of Frisco, Texas (the "City of Frisco") and Detective Brenna Bearden ("Bearden") (Dkt. #14 at ¶¶ 11–12). Plaintiff's First Amended Complaint (the "Complaint") is not a model of clarity. To compile the factual background of this case, the Court considered Plaintiff's Complaint, the documents attached to the Complaint, and the documents attached to the Motions.

In short, Plaintiff's allegations center around two state-court actions: (1) *In the Matter of the Marriage of Layne Miles and Alex Ross Miles, et. al.*, Case No. 23-5332-442, in the 442nd Judicial

District Court of Denton County, Texas (the "Divorce Action"); and (2) *State of Texas v. Alex Ross Miles*, Case No. F23-3843-211, in the 211th District Court of Denton County, Texas (the "Criminal Action") (Dkt. #14 at ¶¶ 13–79). Orders entered in the Divorce Action are relevant to the affidavits and warrants used to commence the Criminal Action against Plaintiff.

In his Complaint, Plaintiff asserts that Bearden's wrongful conduct, as a Texas Peace Officer employed by the City of Frisco, was instrumental in the commencement of the Criminal Action against him (Dkt. #14 at ¶ 12; Dkt. #16 at p. 5). He contends that Bearden's sworn affidavits were riddled with misrepresented facts and fabricated evidence, and that her testimony omitted exculpatory information Bearden collected throughout her investigation (Dkt. #14-5; Dkt. #16-2; Dkt. #16-4). Plaintiff contends that because of this testimony, he was wrongfully searched, arrested, and prosecuted for stalking his ex-wife Layne Schramm ("Schramm"), a felony offense under the Texas Penal Code (Dkt. #14-3). A chronological outline of events is set forth below, which culminates in the dismissal of the Criminal Action (Dkt. #14-9).

**A.      Schramm initiates the Divorce Action in Denton County, Texas.**

On June 14, 2023, Plaintiff and Schramm, his then-wife, engaged in discussions without counsel regarding their separation, the division of their marital assets, and the custody arrangement for their two children (Dkt. #14 at ¶ 13). On June 15, 2023, Schramm purportedly conveyed their home at 2850 Doe Creek Trail, Frisco, Texas 75034 (the "Marital Residence") to Plaintiff via quitclaim deed (Dkt. #14 at ¶ 14). According to Plaintiff, Schramm then retained counsel to renege on their prior discussions and pursue formal discovery regarding the division of the marital assets (Dkt. #14 at ¶ 15). On June 21, 2023, Schramm initiated the Divorce Action, filed in the in the 442nd Judicial District Court of Denton County, Texas, before Judge Tiffany Haertling (Dkt. #14 at ¶ 16; Dkt. #16-9).

**B.      Plaintiff reports the purported threats made against him to the City of Frisco.**

Plaintiff does not allege the divorce was acrimonious, but he does assert that he moved out of the Marital Residence and that Schramm and her family threatened him with "bodily injury and death on multiple occasions," making him fear for his safety and well-being (Dkt. #14 at ¶¶ 15, 17). Plaintiff alleges Schramm went so far as to make threats against their children (Dkt. #14 at ¶ 22). Plaintiff subsequently reported these threats to the City of Frisco Police Department (Dkt. #14 at ¶ 17). According to Plaintiff, Detective Erika Landin ("Landin") was assigned to investigate Plaintiff's reports against Schramm (Dkt. #14 at ¶ 18). Landin purportedly scheduled a phone interview with Plaintiff for July 7, 2023, but she never conducted the interview or pursued further investigation (Dkt. #14 at ¶¶ 19, 26).

**C.      Plaintiff and Schramm enter the Agreed Temporary Orders in the Divorce Action.**

On July 10, 2023, Plaintiff and Schramm entered a Rule 11 Agreement for Temporary Orders regarding possession of the Marital Residence and custody of both children (Dkt. #16-9). On July 12, 2023, Judge Haertling entered the Rule 11 Agreement for Temporary Orders into the Court's record (Dkt. #16-10). On August 3, 2023, Judge Hartling then entered the Agreed Temporary Orders, which stated, in relevant part: (1) Schramm and Plaintiff were appointed as Joint Managing Conservators of the children; (2) Schramm and Plaintiff agreed to an Expanded Standard Possession Order regarding the children; (3) Schramm would have exclusive and private use and possession of the Martial Residence while the Divorce Action remained pending; (4) Plaintiff was enjoined from entering or remaining on the premises of the Martial Residence absent a court order; (5) Plaintiff was prohibited from interfering with Schramm's use of the

3

Marital Residence; and (6) the Agreed Temporary Orders would continue in full force until the signing of the Final Decree of Divorce or until further order by the court (Dkt. #16-10).[1]

### D.    Plaintiff enters Marital Residence in violation of the Agreed Temporary Orders.

Plaintiff contends that while the Divorce Action remained pending, between July 20, 2023, and August 25, 2023, Schramm invited Plaintiff to the Marital Residence on multiplate occasions for various reasons—to see the children, to return the children, to access his personal property, and to stay the night on one occasion (Dkt. #14 at ¶ 21). Plaintiff contends Schramm's invitations were documented through texts, and Plaintiff confirms that certain neighbors saw him at the Martial Residence on August 13, 2023, after the Agreed Temporary Orders were entered (Dkt. #14 at ¶¶ 21, 23).[2]

### E.    Schramm reports Plaintiff for stalking to City of Frisco Police Department.

The exact events that took place next are convoluted; however, the Court understands that between August 22, 2023 and August 25, 2023, Plaintiff and Schramm separately communicated with various City of Frisco agents regarding their interactions while the Divorce Action remained pending (Dkt. #14 at ¶¶ 24–41). Specifically, Plaintiff alleges that on August 22, 2023, Schramm, along with her attorney, reported to two officers at the City of Frisco Police Department that Plaintiff was stalking her (Dkt. #14 at ¶¶ 27, 29). Namely, Schramm reported that Plaintiff was calling her 15 to 20 times a day, visiting and entering the Marital Residence without her permission

---

[1]    The Temporary Agreed Orders also noted Schram would have exclusive use and control of the 2017 Ford Escape in her possession, and Plaintiff would have exclusive use and control of the Ford F-150 in his possession (Dkt. #16-10 at p. 31). Plaintiff contends that the accurate identification of his vehicle is critical to refute the allegations that he was the driver of a Dodge Ram later seen circling Schramm's home (Dkt. #14 at ¶ 3).

[2]    However, Plaintiff does not allege he was authorized to enter the Marital Residence *by court order* as the Agreed Temporary Orders require (Dkt. #16-10 at p. 30).

(in violation of the Agreed Temporary Orders), logging on to her Apple and e-mail accounts, and potentially tracking her (Dkt. #14 at ¶¶ 27, 29). Schramm finally reported that she feared for her safety (Dkt. #14 at ¶ 29). Plaintiff contends that at the time Schramm made this report, the relevant officers searched Schramm's vehicle and confirmed there was no tracking device to be found (Dkt. #14 at ¶ 28).

In the notes these officers took, they documented that when Schramm first arrived at the station to make her report, Plaintiff arrived shortly after and attempted to talk to Schramm in the parking lot, but she refused to speak with him (Dkt. #14 at ¶ 29). Plaintiff alleges this encounter was a coincidence (Dkt. #14 at ¶ 27). Once Schramm's attorney arrived, Plaintiff left (Dkt. #14 at ¶ 29). Plaintiff eventually returned after Schramm had left and spoke to one of the officers (Dkt. #14 at ¶¶ 28–29). Plaintiff alleges he was there to report the death threats he received from Schramm and her father (Dkt. #14 at ¶¶ 28–29). However, after seeing Schramm, Plaintiff wanted to know if he was a suspect in any investigation, but the officers would not provide that information to him (Dkt. #14 at ¶ 29).[3]

### F.    Bearden investigates Schramm's report against Plaintiff.

Bearden was assigned to investigate Schramm's stalking allegations, and an interview was scheduled for August 23, 2023 (Dkt. #14 at ¶¶ 31–32).[4] Schramm, Schramm's attorney, Bearden, and another individual from the City of Frisco Victim's Assistance Department met for this interview (Dkt. #14 at ¶ 33). Plaintiff alleges that at this interview, Bearden confirmed that

---

[3]  On August 23, 2023, Plaintiff filed a public information request to obtain Schramm's report for the sole purpose of refuting the allegations, but Plaintiff alleges the City of Frisco Police Department objected to releasing the public records and petitioned the Texas Attorney General for exceptions to withhold the information on August 28, 2023 (Dkt. #14 at ¶ 30).

[4]  Plaintiff notes that several months passed after he made his initial report against Schramm and her father regarding threats of physical harm before any City of Frisco officer investigated his allegations (Dkt. #14 at ¶ 32).

Schramm's phone was not tampered with, hacked, or compromised in any way, that Plaintiff was not legally prevented from driving by the Marital Residence, that Schramm confirmed her father's anger towards Plaintiff was "so out of control," and that she admitted to threatening to kill Plaintiff herself (Dkt. #14 at ¶¶ 34–36).[5]

On August 25, 2023, Bearden interviewed Plaintiff, during which Plaintiff maintained that Schramm's stalking allegations were retaliatory in nature, and Plaintiff showed Bearden audio recordings of Schramm's threats against him, as well as text messages proving her various violations of the custody arrangements in the Agreed Temporary Order (Dkt. #14 at ¶ 38). Plaintiff also alleges that during this interview, Bearden seized Plaintiff's phone without his consent or a warrant (Dkt. #14 at ¶ 39).

### G.    Bearden files her Affidavit and Application for Cellular Device Search Warrant.

On August 28, 2023, Bearden filed an Affidavit and Application for Cellular Device Search Warrant (the "Search Warrant Affidavit"), identifying Plaintiff's iPhone, which was seized from him during the August 25, 2023 interview and stored at the City of Frisco Police Department Digital Forensics Lab (Dkt. #14 at ¶ 42; Dkt. #16-2). Plaintiff contends that within this Search Warrant Affidavit, Bearden sets forth *Schramm's* version of the facts to establish probable cause that Plaintiff was stalking her (Dkt. #14 at ¶ 42; Dkt. #16-2).

The following background was obtained from the Search Warrant Affidavit attached to Bearden's motion to dismiss (Dkt. #16-2). The Search Warrant Affidavit includes nineteen paragraphs establishing Bearden's basis for probable cause that evidence of Plaintiff's stalking can

---

[5]    Plaintiff also alleges that on August 31, 2023, Schramm's father admitted to making threats against Plaintiff and this admission was captured by another town's police officers' body cameras (Dkt. #14 at ¶ 25). Plaintiff does not allege that Bearden or anyone else at the City of Frisco Police Department reviewed this footage.

be found in his iPhone. Bearden begins her testimony by noting that the facts in her affidavit were made known to her by Schramm's report taken by Frisco police officers, by her interviews with Schramm *and* Plaintiff, and by evidence Schramm provided to her.

Bearden continues by retelling Schramm's report that Plaintiff began stalking her *before* she filed the Divorce Action. Specifically, Bearden outlines Schramm's allegations that Plaintiff was calling her 15 to 20 times a day, entering the Marital Residence without her permission and in violation of a "civil restraining order" issued in the Divorce Action,[6] logging on to her Apple and e-mail accounts remotely, and carrying firearms, which made Schramm fear for her safety. Bearden also relayed that Schramm hired a private investigating company to show that Plaintiff was accessing Schramm's devices using her account login information.

Bearden also recounts Schramm's initial visit to the City of Frisco Police Department on August 22, 2023, to make her stalking report. Bearden denotes that the Police Department has surveillance video footage corroborating the interaction that took place between Schramm and Plaintiff outside of the police department before she made her report. The footage shows that on August 22, 2023, Schramm arrived at the Police Department's parking lot at 6:14 p.m., and Plaintiff arrived at 6:23 p.m. Plaintiff attempted to enter the station, but the doors were locked. Plaintiff then approached Schramm while she was inside her vehicle waiting for her attorney. He knocked on her window, but she did not appear to roll down the window. He then moved his own vehicle to the

---

[6]   Later in the Search Warrant Affidavit, Bearden once again references the "court order" that dictates Schramm had exclusive rights to the Martial Residence. Bearden is presumably referring to the Agreed Temporary Orders entered in the Divorce Action (Dkt. #16-10). However, Plaintiff takes issue with the fact that no such "civil restraining order" existed that he could have violated and that he was complying with the custody arrangement per the Agreed Temporary Orders (Dkt. #14 at ¶ 42).

parking spot next to Schramm's vehicle, where he sat for a few moments before leaving the scene as Schramm's attorney arrived.

Within the Search Warrant Affidavit, Bearden also explains that Schramm's neighbors advised her that Plaintiff had been seen driving around the Marital Residence when Schramm was at work and when the kids were at daycare. Bearden notes that Schramm provided her with surveillance videos from a neighbor's property showing Plaintiff's vehicle driving by the Martial Residence.

Bearden also recounts the information she collected during her interview with Plaintiff. Bearden relays Plaintiff's reports that Schramm and her father had made threats against him, and she notes that Plaintiff played three recordings for her—two of which appeared to be Plaintiff speaking with Schramm and one of which was a recording in which Schramm tells their children that Plaintiff "was not nice" (Dkt. #16-2 at p. 4). Bearden does not explain whether these recordings corroborate Plaintiff's reports against Schramm and her father. Bearden also explains that Plaintiff reported Schramm for violating the "court orders specifying their custody arrangement," and that Schramm was violating "court paperwork" (Dkt. #16-2 at p. 4).[7]

Bearden concludes by outlining the types of evidence she seeks from Plaintiff's iPhone: "[C]all logs, SMS/MMS messages, secondary texting applications and messages, pictures to include geotagging information, videos and audio files, secondary phone number accounts, GPS directions and other sources of information, internet history and applications." Bearden goes on to explain how this evidence will help corroborate or refute Schramm's stalking allegations;

---

[7]  Again, based on the time the Search Warrant Affidavit was filed, Bearden's references to court orders presumably refer to the Agreed Temporary Orders in the Divorce Action (Dkt. #16-10).

specifically, the frequency at which Plaintiff was visiting the Martial Residence. Bearden concludes the Search Warrant Affidavit by stating the following: "Because the sole purpose of this affidavit is to establish probable cause that a criminal offense has occurred, not every relevant fact known to me, or to other investigators, is included within. Rather, only those facts necessary to establish probable cause have been discussed."[8]

### H.    The Search Warrant is issued.

Judge Sherry Shipman of the 16th District Court of Denton County, Texas reviewed the Search Warrant Affidavit, and on August 28, 2023, Judge Shipman issued a Warrant for Portable Electronic Device Search of Plaintiff's phone (the "Search Warrant") (Dkt. #14 at ¶ 42; Dkt. #16-2 at p. 6; Dkt. #16-3). Plaintiff maintains that the City of Frisco Police Department's phone analysis and extraction of his phone showed he did not hack or tamper with Schramm's phone, nor did the analysis corroborate any of Schramm's stalking allegations or her claims that he was visiting the Marital Residence without her permission (Dkt. #14 at ¶¶ 39, 46–57).

### I.    Bearden files an Affidavit for Arrest Warrant.

Plaintiff alleges that despite knowing the Search Warrant did not yield any evidence establishing probable cause, Bearden filed an Affidavit for Arrest Warrant (the "Arrest Warrant Affidavit") stating she has good reasons to believe that Plaintiff committed the offense of stalking in violation of Texas Penal Code § 42.072 (Dkt. #14 at ¶ 43; Dkt. #16-4). The Arrest Warrant Affidavit largely recounts the same facts that formed the basis of the Search Warrant Affidavit,

---

[8] Plaintiff alleges the Search Warrant Affidavit relies on various misrepresentations and omitted material facts; specifically, Plaintiff contends that Bearden knew, among other things, that Schramm invited Plaintiff to the Marital Residence on various occasions, that Schramm and her father made threats of bodily injury against Plaintiff, and that Bearden confirmed Plaintiff did not hack or tamper with her phone during her interview with Schramm on August 23, 2023 (Dkt. #14 at ¶¶ 46–57).

including the specific encounter between Schramm and Plaintiff outside the City of Frisco Police Department on August 22, 2023 (Dkt. #16-4). The Arrest Warrant Affidavit also notes that this interaction was corroborated by the Frisco Police Department's video surveillance footage (Dkt. #16-4).

### J.    The Arrest Warrant is issued and Plaintiff surrenders himself.

On August 30, 2023, the City of Frisco Municipal Judge Arturo Maldonado reviewed the Affidavit for Arrest Warrant and then issued the Arrest Warrant, concluding that probable cause existed to arrest Plaintiff for the third-degree felony of stalking in violation of Texas Penal Code § 42.072 (Dkt. #16-5). That day, Bearden informed Plaintiff that the Arrest Warrant had been issued (Dkt. #14 at ¶ 58). On September 1, 2023, Plaintiff surrendered himself at the Denton County jail, where he was then arraigned by Magistrate Judge Stephanie Askew (Dkt. #14 at ¶ 60; Dkt. #16-6). Plaintiff signed an acknowledgement form in which he declared he was not indigent nor entitled to the appointment of counsel, and he agreed to the bond amount (Dkt. #16-6). Additionally, Judge Askew determined probable cause existed as to the stalking offense, supported by the confirmed Arrest Warrant (Dkt. #16-6).

### K.    Magistrate's Emergency Protective Order is issued.

On September 1, 2023, Judge Askew issued a Magistrate's Emergency Protective Order which stated the following: "Having found probable cause to believe that the offense occurred and based on the facts alleged therein, the undersigned Magistrate finds that a need for safety of the alleged victim and the community justify the following Order as a reasonable condition of bond upon release from custody" (Dkt. #16-7). Plaintiff was thus prohibited from the following: (1) assaulting, or committing any act of family violence on Schramm or the children; (2) communicating a threat to Schramm or the children; (3) going to or within 500 feet of the

Marital Residence, Schramm's workplace, or the children's daycare; or (4) possessing a firearm while the Order remained in effect (Dkt. #14 at ¶ 61; Dkt. #16-7). Plaintiff acknowledged receiving a copy of the Magistrate's Emergency Protective Order and signed it (Dkt. #16-7 at p. 2).

**L.     Plaintiff reports Schramm's violations of the Agreed Temporary Orders.**

Plaintiff alleges that before he surrendered himself, Schramm concealed the children in violation of the Agreed Temporary Orders (Dkt. #14 at ¶ 59). On September 2, 2023, after he was released, Plaintiff contacted a City of Frisco Police Department officer to report Schramm's alleged custody violations (Dkt. #14 at ¶ 62). Despite Plaintiff's argument that the Temporary Agreed Orders entered by Judge Haertling allowed the police to enforce the custody terms, the officer would not investigate the report and refused to assist Plaintiff, relying on a City of Frisco policy stating they could not assist with interference-of-child-custody claims unless the duration of the interference exceeded 60 days.

**M.     Examining Trial scheduled and Temporary Restraining Order is issued.**

On September 29, 2023, Plaintiff filed a Motion for Examining Trial in the Criminal Action to challenge the finding of probable cause in Bearden's Arrest Warrant Affidavit for the felony offense of stalking (Dkt. #14 at ¶ 63). The Examining Trial was set for October 25, 2023 (Dkt. #16-1). However, before this proceeding occurred, Judge Haertling entered a Temporary Restraining Order and an Order Setting a Hearing for Temporary Orders on October 11, 2023 (Dkt. #16-9; Dkt. #16-11). The Temporary Restraining Order prohibited Plaintiff from the following: (1) possessing or accessing the children; (2) coming within 1,000 feet of the Martial Residence, Schramm's place of employment, or the children's daycare; and (3) communicating with Schramm about anything other than the children via any means other than through the court-appointed channel (Dkt. #16-11). The Order Setting a Hearing for Temporary Orders

ordered Plaintiff to appear for a hearing in person with certain documents to determine whether the Temporary Restraining Order should be made a Temporary Injunction or modified, pending final hearing in the Divorce Action (Dkt. #16-11).

**N.      The True Bill of Indictment is issued against Plaintiff.**

On October 13, 2023, a Denton County Grand Jury indicted Plaintiff for the felony offense of stalking (the "Indictment") (Dkt. #14-3; Dkt. #16-8). The Indictment identified three instances of stalking:

> [Plaintiff], on or about the 18th day of July, 2023 through the 31st day of July, 2023, and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there, and pursuant to the same scheme and course of conduct that was directed specifically at [Schramm], hereafter styled the complainant, knowingly engage in conduct directed specially toward [Schramm] that **[Plaintiff] knew or reasonably should have known that [Schramm] would regard as threatening bodily injury or death or that an offense would be committed against the property of the complainant, namely by repeatedly calling [Schramm] or by threatening to take their children from [Schramm]** and [Plaintiff]'s conduct would cause a reasonable person to fear, and did cause the complainant to be placed in fear of bodily injury to death or that an offense would be committed against [her] property . . . ;
>
> [O]n or about the 5th day of August, 2023 through the 21st day of August, 2023, in said County and State, [Plaintiff] did then and there knowingly engage in conduct that **[Plaintiff] knew or reasonably should have known that the complainant would regard as threatening bodily injury or death or that an offense would be committed against the property of the complainant namely by driving by the residence of [Schramm] and [Plaintiff]'s conduct would cause a reasonable person to fear**, and did cause the complainant to be placed in fear of bodily injury or death or that an offense would be committed against the property of [Schramm];
>
> [O]n or about the 22nd day of August, 2023, in said County and State, [Plaintiff] did then and there knowingly engage in conduct that **[Plaintiff] knew or reasonably should have known that the complainant would regard as threatening bodily injury or death or that an offense would be committed against the property of the complainant, namely by showing up to Frisco Police Department where [Schramm] was located** and [Plaintiff]'s conduct would cause a reasonable person to fear, and **did cause the complainant to be placed in fear of bodily injury or death or that an offense would be committed against the property** of [Schramm].

(Dkt. #16-8) (emphasis added).

Bearden served as a witness during the Grand Jury proceedings (Dkt. #14-3; Dkt. #14-7; Dkt. #16-8). Plaintiff contends that Bearden served as a witness to ensure the Indictment was obtained despite Bearden's possession of exculpatory evidence including Plaintiff and Schramm's communication history and GPS location records,[9] surveillance video footage, and multiple interviews, which all show Bearden knew or should have known her testimony against Plaintiff was not true and was plagued with falsity, misrepresentations, and omissions (Dkt. #14 at ¶¶ 66–72). The day the Indictment was entered, the Criminal Action commenced and the Examining Trial was cancelled (Dkt. #16-1).

**O.      The Agreed Temporary Injunction, Mediated Settlement Agreement, and Final Order were entered in the Divorce Action.**

On October 19, 2023, Judge Haertling entered an Agreed Temporary Injunction in the Divorce Action against Plaintiff, restraining him in the same capacity as the prohibitions outlined in the October 11, 2023 Temporary Restraining Order (Dkt. #16-13). Then, on November 14, 2023, Plaintiff and Schramm filed a Mediated Settlement Agreement in the Divorce Action (Dkt. #16-9). Finally, on March 18, 2025, the Court entered a Final Order thereby closing the Divorce Action (Dkt. #16-9).

**P.      A *Franks* hearing was requested and scheduled prior to the dismissal of the Criminal Action.**

On March 18, 2024, Plaintiff filed a Supplemental Motion to Suppress and Request for a *Franks* hearing to challenge the truthfulness of the probable cause alleged by Bearden (Dkt. #14 at

---

[9]  Plaintiff alleges his and Schramm's phones were forensically downloaded, and a copy had been given to Bearden (Dkt. #14 at ¶ 67).

¶ 73; Dkt. #16-1). The request was granted and the *Franks* hearing was scheduled for March 22, 2024 (Dkt. #16-1; Dkt. #14 at ¶ 73). However, on March 22, 2024, the Government filed a Motion to Dismiss the Criminal Action, which Judge Brody Shanklin granted (Dkt. #14 at ¶ 74; Dkt. #14-8).

Plaintiff maintains that the Criminal Action could have been avoided or dismissed earlier, but the City of Frisco—through its Police Department and its policymaker, the Chief of Police—maintains and enforces an official policy that prohibits officers, like Bearden, from dismissing a case after it has been filed or an arrest after it has occurred (Dkt. #14 at ¶ 78). Plaintiff contends this policy fails to recognize and does not allow for dismissal of criminal prosecutions even if exculpatory information is subsequently revealed (Dkt. #14 at ¶ 78). Plaintiff points specifically to Policy 06.04.10, entitled "Dismissal of Charges," which states:

> Any case filed or arrest made by this department in conjunction with a family violence investigation SHALL NOT be dismissed by any Officer. If the victim of the family violence desires that the charge be dismissed, the victim should be referred to the appropriate forum, (i.e., the District Attorney's Office; the Municipal Court, or the court of competent jurisdiction).

(Dkt. #14 at ¶ 93; Dkt. #14-4 at p. 4).

## II.    Procedural Background

On May 16, 2025, Plaintiff filed his Original Complaint against the City of Frisco and Bearden for wrongful arrest and prosecution (Dkt. #1). Both Defendants moved to dismiss the Original Complaint (Dkt. #7; Dkt. #8). Plaintiff subsequently moved for leave to file the amended complaint (Dkt. #13). On September 19, 2025, the Court granted Plaintiff leave, deemed Plaintiff's amended complaint filed, and denied Defendant's prior motions to dismiss as moot (Dkt. #15). Through his Complaint, Plaintiff seeks money damages under 42 U.S.C. § 1983 for fabrication of evidence, false arrest, malicious prosecution, *Franks* violation, and *Monell* liability (Dkt. #14 at ¶¶ 80–110).

14

On October 2, 2025, the City of Frisco and Bearden each filed their second Motions to Dismiss Plaintiff's Complaint under Rule 12(b)(6) (Dkt. #16; Dkt. #17). Bearden argues that Plaintiff fails to meet the plausibility standard necessary to overcome qualified immunity (Dkt. #16 at pp. 26–27). Specifically, she contends that Plaintiff cannot: (1) establish a viable fabrication-of-evidence claim sufficient to overcome qualified immunity; (2) state a viable Fourth Amendment claim because the causal chain was broken; (3) assert a viable *Franks* violation; (4) allege any plausible Fourth Amendment claim against Bearden that overcomes qualified immunity; (5) state a plausible malicious prosecution claim; or (6) plead a plausible claim for recovery of punitive damages (Dkt. #16 at pp. 15–30). Separately, the City of Frisco argues that Plaintiff's pleadings are deficient because he fails to allege facts sufficient to support a plausible municipal liability claim under *Monell*; specifically, that Plaintiff did not allege that the constitutional deprivations were caused by an official policy, custom, or practice of the City of Frisco (Dkt. #17 at p. 10). The issues in the Motions have been fully briefed and are ripe for adjudication (Dkt. #18; Dkt. #19; Dkt. #20; Dkt. #21).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the

plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

16

## ANALYSIS

### I.   Qualified Immunity

The Court begins with Bearden's motion to dismiss (Dkt. #16). Plaintiff asserts the following constitutional claims under 42 U.S.C. § 1983 against Bearden: (1) fabrication of evidence; (2) false arrest; (3) malicious prosecution; and (4) *Franks* violation (Dkt. #14 at ¶¶ 80–110). This statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

To establish liability under § 1983, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "The Supreme Court over several years has developed protection from civil liability for persons going about their tasks as government workers in the form of immunity; not the absolute immunity enjoyed by prosecutors and judges, but a qualified immunity." *Cole v. Carson*, 935 F.3d 444, 446 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When defendants assert the defense of qualified immunity and have established that the alleged actions were conducted pursuant to the exercise of their discretionary authority, the burden

then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Indeed, Bearden argues she is entitled to qualified immunity as to each of Plaintiff's claims (Dkt. #16 at p. 2). Plaintiff anticipated Bearden's qualified immunity defense, and alleged the following in his Complaint:

> Plaintiff pleads that it is clearly established law that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and are entitled to due process of law under the Fifth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment. No reasonable government official or agent would have acted as Defendants did under the circumstances of this case, by arresting and charging Plaintiff without (legitimate) probable cause and without providing (legitimate) due process. Consequently, *Defendants are not entitled to qualified immunity*.

(Dkt. #14 at ¶ 112) (emphasis added).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, courts must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, courts must determine whether "the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). An "officer is entitled to qualified immunity if there is no violation, or if the conduct did not violate law clearly established at the time." *Cole*, 935 F.3d at 451. The Supreme Court instructs district courts "to exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court beings with the first prong of the qualified immunity analysis—whether Plaintiff has alleged a constitutional violation. Again, Plaintiff's § 1983 claims rest on his contentions that he was wrongfully searched, arrested, and prosecuted without probable cause and without due process; specifically, Plaintiff asserts the following constitutional claims against Bearden: (1) fabrication of evidence; (2) false arrest; (3) malicious prosecution; and (4) a *Franks* violation (Dkt. #14 at ¶¶ 80–110).[10] Plaintiff argues these claims arise from "a single, corrupt course of conduct: Detective Bearden's deliberate and reckless manipulation of facts to manufacture probable cause where none legitimately existed, and continued the prosecution, even in the face of exculpatory evidence" (Dkt. #18 at p. 7). Plaintiff contends this course of conduct can be observed in the Search Warrant Affidavit, the Arrest Warrant Affidavit, and through her testimony in the Grand Jury proceedings (Dkt. #18 at p. 7).

The Court first turns to Plaintiff's Fourth Amendment claim for a *Franks* violation. In *Franks v. Delaware*, 438 U.S. 154 (1978), "the Supreme Court held an officer violates the Fourth Amendment if he deliberately or recklessly provides false information necessary to secure an arrest warrant." *Laviage v. Fite*, 47 F.4th 402, 406 (5th Cir. 2022). To prevail on a *Franks* claim, "plaintiffs

---

[10] Plaintiff contends Bearden committed the following actions: (1) Bearden "fabricated evidence for the purpose of falsely obtaining charges against Plaintiff" (Dkt. #14 at ¶ 82); (2) Bearden "conducted a reckless and malicious criminal investigation, knowingly causing Plaintiff's arrest without (legitimate) probable cause and pursued a criminal prosecution of Plaintiff for alleged conduct that was not criminal and based upon 'facts' she knew, or should have known were untrue" (Dkt. #14 at ¶ 87); (3) Bearden "caused Plaintiff to be improperly subjected to arrest and criminal prosecution for which there was no legitimate probable cause," and Bearden made "sworn statements" regarding Plaintiff's alleged culpability "with the knowledge that said statements were false, contained material omissions and/or were made with a reckless disregard for the truth" (Dkt. #14 at ¶¶ 101, 103); and (4) Bearden's "affidavits supporting the Arrest Warrant and the Search Warrant each contained false statements and made material omissions," and Bearden "made such statements and made such omissions knowingly and intentionally or with a reckless disregard for the truth" (Dkt. #14 at ¶ 107).

19

must show that (1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were *necessary to the finding of probable cause*." *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021) (emphasis added). The Fifth Circuit has stated that the "last element requires courts to conduct a 'corrected affidavit' analysis to determine 'whether the warrant affidavit would support probable cause if the misstatements and material omissions were eliminated.'" *Melancon v. Walsh*, No. 24-30232, 2025 WL 429977, at *4 (5th Cir. Feb. 7, 2025) (per curiam) (unpublished) (quoting *Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024)).

In *Melancon*, the Fifth Circuit affirmed a district court's finding that the plaintiff's arrest was supported by probable cause and arrested the plaintiff's claims for constitutional and state law violations. 2025 WL 429977, at *1. "Probable cause means a fair probability that the defendant committed the crime, which requires more than a bare suspicion but less than a preponderance of the evidence." *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (citation modified). To determine if probable cause exists, "courts must look to the 'totality of the circumstances' and decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018)).

Here, the relevant felony offense Plaintiff was ultimately charged for was stalking (Dkt. #16-5; Dkt. #16-6). Section 42.072(a) of the Texas Penal Code provides that a person commits the offense of stalking if, on more than one occasion and pursuant to the same scheme or course of conduct directed at another person, the person knowingly engages in conduct that

20

constitutes an offense under subsections (a)(1), (2), and (3)—this includes conduct that the "actor knows or reasonably should know the other will regard as *threatening bodily injury or death* for the other person or that an offense will be committed against a member of the other person's family or household." TEX. PENAL CODE § 42.072(a) (emphasis added). An offense under this section is a felony of the third degree. TEX. PENAL CODE § 42.072(b).

Like it did in *Melancon*, this case turns on a "corrected affidavit" analysis. 2025 WL 429977, at *5 (finding that probable cause remained even after reconstructing the affidavit to include the purported omissions and to exclude the alleged misrepresentations); *see also Hughes*, 100 F.4th at 623 (conducting a "corrected affidavit" analysis and finding that once the officers' misstatements and omissions were corrected, there was no basis to find probable cause that the plaintiff committed a felony).

Here, Plaintiff argues that he sufficiently stated a *Franks* claim by alleging that Bearden "did not merely submit a flawed affidavit; she constructed a false narrative by fabricating inculpatory 'evidence' and deliberately omitting a mountain of exculpatory facts she possessed that eviscerated her complainant's credibility and negated probable cause" (Dkt. #18 at p. 15). Specifically, Plaintiff argues there are "over twenty specific and materially false statements and omissions" in both the Search Warrant Affidavit and Arrest Warrant Affidavit (Dkt. #18 at pp. 16–18).

In sum, Bearden's purported fabrications center around four events: (1) Plaintiff did not circle around the Marital Residence in a Dodge Ram; (2) Plaintiff did not violate a "civil restraining order"; (3) Schramm admitted to threatening to kill Plaintiff herself, which Plaintiff reported to the City of Frisco; and (4) the Police search of Plaintiff's iPhone and vehicle yield no evidence

21

linking Plaintiff to the allegations made in the Affidavit (Dkt. #18 at p. 18).[11] In her reply, Bearden acknowledges Plaintiff's list of twenty-two false statements and omissions and argues that they are ultimately "immaterial to the existence of probable cause" for the offense of stalking (Dkt. #20 at p. 5). The Court agrees.

First, the Court begins with the fabrications that can be refuted even when taking Plaintiff's allegations as true. Plaintiff contends he did not violate a civil restraining order as the Search Warrant Affidavit states. Plaintiff seemingly refers to Bearden's statement that the "civil restraining order issued and signed by [the] Honorable Judge Haertling states [Plaintiff] is not allowed to be at and enter the home against [Schramm's] wishes" (Dkt. #16-2 at p. 3). The "civil restraining order" mentioned refers to the Agreed Temporary Orders entered in the Divorce

---

[11]  Plaintiff argues these false statements and omissions include the following:

> (1) Vehicle fabrication (neighbor's Dodge Ram transformed into Plaintiff's F-150); (2) Technical capabilities fabrication (manufacturing non-existent skills both parties denied); (3) Restraining order contradictions (three different and contradictory positions on same material fact); (4) Phone record statistical manipulation (deliberate misrepresentation of objective data in Defendants' possession); (5) Home searches for "bugs" did not turn up anything; (6) Ms. Schramm stated to the Defendant security cameras were in the house, but never captured the Plaintiff inside, but still avers Plaintiff gained access inside the marital residence; (7) Vehicle searches for tracking devices yielded no credible evidence; (8) Ms. Schramm's death threats against the plaintiff; (9) Ms. Schramm's father's death threats against the plaintiff; (10) Invitations by Ms. Schramm to the plaintiff to come to the material residence; (11) Ms. Schramm's child custody violations; (12) Ms. Schramm's phone extraction; (13) Plaintiff's phone extraction; (14) Phone interviews with neighbors saying they've seen the Plaintiff at the house, but knowing the Plaintiff was invited by Ms. Schramm herself; (15) Plaintiff being invited to stay at the home on July 20th, 2023; (16) August 22nd, 2023, Ms. Schramm invited the Plaintiff to drop the kids off at the marital residence; (17) Plaintiff was at the police station on August 22, 2023 to file a public information request due to recent death threats; (18) No threats of violence by the *Plaintiff* against Ms. Schramm was ever alleged; (19) Ms. Schramm stated to Defendant Bearden that no custody disputes ever happened during the Plaintiff's time; (20) No mention of the Defendant interviewing the Plaintiff; (21) Ms. Schramm violating the so-called "civil restraining order" herself; and (22) No mention of the fact Ms. Schramm officially denied threats of violence with the family law case that Bearden referenced

(Dkt. #18 at pp. 16–18) (modified for readability).

22

Action by Judge Haertling (Dkt. #16-10).[12] Although Plaintiff takes issue with the fact that no such "civil restraining order" existed that he could have violated, Plaintiff does not allege he was authorized to enter the Marital Residence *by court order* as required under the Agreed Temporary Orders (Dkt. #16-10 at p. 30).[13]

Second, Plaintiff takes issue with the fact that the Search Warrant Affidavit purportedly does not mention that Schramm admitted to threatening to kill Plaintiff herself, which Plaintiff reported to the City of Frisco. This is not true. On August 25, 2023, Bearden interviewed Plaintiff (Dkt. #14 at ¶ 38). Bearden recounts the information she collected during her interview with Plaintiff in paragraph thirteen of the Search Warrant Affidavit (Dkt. #16-2 at p. 4). Bearden relays Plaintiff's reports that Schramm and her father had made threats against him, and she notes that Plaintiff played three recordings for her. Bearden also explains that Plaintiff reported Schramm for violating the "court orders specifying their custody arrangement" (Dkt. #16-2 at p. 4). Thus, Bearden's own report that Schramm admitted to threatening Plaintiff in the Search Warrant Affidavit did not alter Judge Shipman's probable cause analysis for the offense of stalking and issued the Search Warrant (Dkt. #14 at ¶ 42; Dkt. #16-2 at p. 6; Dkt. #16-3).

The third category of Bearden's alleged misstatements and omissions relates to Plaintiff's position that he was not the individual seen circling around the Marital Residence. Taking this allegation as true, the affidavit must be corrected. Specifically, in paragraph ten of the Search

---

[12] The Agreed Temporary Orders, entered on July 12, 2023, stated that Schramm would have exclusive and private use and possession of the Martial Residence while the Divorce Action remained pending; Plaintiff was enjoined from entering or remaining on the premises of the Martial Residence absent a court order; Plaintiff was prohibited from interfering with Schramm's use of the Marital Residence; and the Agreed Temporary Orders would continue in full force until the signing of the Final Decree of Divorce or until further order by the court (Dkt. #16-10).

[13] Further, although Bearden incorrectly referred to the Agreed Temporary Orders from the Divorce action as a "civil restraining order," the legal effects on Plaintiff were communicated accurately in the Search Warrant Affidavit (Dkt. #16-2).

Warrant Affidavit, Bearden noted the following: "[Schramm] advised that recently she had been told by her neighbors that [Plaintiff] had been seen driving his vehicle, a gray 2020 Ford F150, [] in the alleyway behind [Schramm]'s residence on multiple occasions including when [Schramm] is at work and the children are at daycare" (Dkt. #16-2 at p. 3).

However, this correction does not alter the probable cause finding. In her initial report, which is retold in Bearden's Search Warrant Affidavit, Schramm stated that she was scared for her safety because Plaintiff frequently visited her residence while she and their kids were asleep, without her consent or knowledge of his arrival. Plaintiff also recounts Schramm's initial report in his *own* Complaint (Dkt. #14 at ¶ 29). Bearden also outlined Schramm's allegations that Plaintiff was calling her fifteen to twenty times a day and logging on to her Apple and e-mail accounts remotely, which is why the evidence she sought from Plaintiff's iPhone was relevant. During the calls, Plaintiff allegedly threatened to go to the Martial Residence and take the kids in violation of the Agreed Temporary Orders in the Divorce Action. Schramm provided Bearden with call logs and messages showing Plaintiff's repeated attempts to communicate with her. Plaintiff does not allege this is a misrepresentation or that he did not make these threats to Schramm regarding their children.

Further, although Plaintiff contends that he "was at the police station on August 22, 2023 to file a public information request due to recent death threats," Bearden denotes in the Search Warrant Affidavit, Bearden denotes that the Police Department has surveillance video footage corroborating the interaction that took place between Schramm and Plaintiff outside of the police station before she made her report against him for stalking, as noted above. During this interaction

24

Schramm stayed in her car while Plaintiff attempted to contact her. She did not let him in her car or roll down the window and waited until her attorney arrived, at which point he left.

The Arrest Warrant Affidavit largely recounts the same facts that formed the basis of the Search Warrant Affidavit. However, Plaintiff's issue with the Arrest Warrant Affidavit is that the search of his iPhone and vehicle yielded no evidence linking Plaintiff to the allegations made in the Search Warrant Affidavit. However, even if Bearden's misstatements and omissions are "corrected," there is still a basis to find probable cause that Plaintiff committed the felony offense of stalking his ex-wife on two occasions. Specifically, Plaintiff does not dispute he made threats against Schramm regarding their children or the specific encounter between Schramm and Plaintiff outside the City of Frisco Police Department on August 22, 2023, recorded on video surveillance (Dkt. #16-4). A Grand Jury determined that these interactions were sufficient to indict Plaintiff for stalking (Dkt. #16-8). Specifically, the Indictment identified three instances of stalking, two of which are described as follows:

> [Plaintiff], on or about the 18th day of July, 2023 through the 31st day of July, 2023, and anterior to the presentment of this Indictment, in the county and state aforesaid, did then and there, and pursuant to the same scheme and course of conduct that was directed specifically at [Schramm], hereafter styled the complainant, knowingly engage in conduct directed specially toward [Schramm] that [Plaintiff] knew or reasonably should have known that [Schramm] would regard as threatening bodily injury or death or that an offense would be committed against the property of the complainant, **namely by repeatedly calling [Schramm] or by threatening to take their children from [Schramm]** and [Plaintiff]'s conduct would cause a reasonable person to fear, and did cause the complainant to be placed in fear of bodily injury to death or that an offense would be committed against [her] property . . . ;

> [O]n or about the 22nd day of August, 2023, in said County and State, [Plaintiff] did then and there knowingly engage in conduct that [Plaintiff] knew or reasonably should have known that the complainant would regard as threatening bodily injury or death or that an offense would be committed against the property of the complainant, **namely by showing up to Frisco Police Department where [Schramm] was located and [Plaintiff]'s conduct would cause a reasonable**

25

**person to fear, and did cause the complainant to be placed in fear of bodily injury or death** or that an offense would be committed against the property of [Schramm].

(Dkt. #16-8) (emphasis added).

As the defendants argue, these facts more than satisfy probable cause for the offense of stalking. *See Kaley v. United States*, 571 U.S. 320, 338 (2014) ("Probable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." (citation modified)). Even after reconstructing the Search Warrant Affidavit and Arrest Warrant Affidavit to exclude the factual misstatements, the Court finds probable cause existed to search and arrest Plaintiff. As a result, Plaintiff fails to plead a Fourth Amendment violation under *Franks*.

Failure to plead a *Franks* claim defeats Plaintiff's remaining claims against Bearden in her individual capacity. *Melancon*, 2025 WL 429977, at *5. Without a *Franks* violation, Plaintiff cannot allege the absence of probable cause—a baseline requirement for the Fourth Amendment claims of false arrest and malicious prosecution. *Melancon*, 2025 WL 429977, at *5 (first citing *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019); and then citing *Thompson v. Clark*, 596 U.S. 36, 43 (2022)). Further, with respect to Plaintiff's claim that Bearden fabricated evidence, Plaintiff cannot establish a violation of the Constitution unless he alleges that the allegedly fabricated evidence was necessary to the finding of probable cause or necessary to the indictment. *See Clayton v. Prudential Ins. Co. of Am.*, 554 F. Supp. 628, 633 (S.D. Tex. 1982) ("Although *Franks* was a fourth amendment case dealing with the sufficiency of an affidavit supporting a magistrate's issuance of a warrant, there is no reason to analyze the question of the sufficiency of testimony supporting a grand jury's

26

issuance of an indictment in any different manner, even if the latter situation arises under the fifth amendment.") (citing *Franks,* 438 U.S. at 156).

Because Plaintiff has not alleged a constitutional violation, Bearden is entitled to qualified immunity. *See Scott v. City of Mandeville*, 69 F.4th 249, 256 (5th Cir. 2023) (finding "no need to reach the second step of the qualified immunity analysis" because there was probable cause to arrest). Accordingly, the Court finds Plaintiff's claims against Bearden for fabrication of evidence, false arrest, malicious prosecution, and *Franks* violation are barred by the defense of qualified immunity and should be dismissed.

## II.    *Monell* Liability

Turning now to the final claim for *Monell* liability, Plaintiff alleges that the City of Frisco is liable for violating his constitutional rights under 42 U.S.C. § 1983 (Dkt. #14 at ¶¶ 92–99). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipal government could be liable under § 1983 when a municipal's official policy or custom causes a violation of a constitutional right. Following that landmark decision, a plaintiff must prove three elements to establish municipal liability under § 1983: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Here, an expansive *Monell* liability discussion is unnecessary. As any § 1983 suit requires a constitutional violation performed under the color of law, Plaintiff's failure to plead the absence of probable cause—and, thereby, state a constitutional violation—stops any further *Monell* analysis. *See Reitz*, 85 F.4th at 795 (finding "[f]urther discussion of *Monell*'s elements, contours, and jurisprudence is unnecessary," where there was no constitutional violation). Specifically, even if

Plaintiff properly pleaded the first two elements of his *Monell* claim, a policy and a policy maker, Plaintiff cannot allege said policy was the "moving force" behind the violation of his constitutional rights if there was no violation. *Peterson*, 588 F.3d at 847. Accordingly, the Court finds that Plaintiff's claim against the City of Frisco should be dismissed.

* * *

Under the facts as alleged by Plaintiff, the presence of probable cause defeats his § 1983 claims against Bearden and the City of Frisco. The Fifth Circuit has held similarly and thus, assured the plaintiff in that case of the following, which the Court finds applicable here:

> [W]e do not minimize the gravity of the deprivation to [the plaintiff's] liberty. We stress that individuals like [the plaintiff] "remain clothed with a presumption of innocence and with their constitutional guarantees intact." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (citing *Stack v. Boyle*, 342 U.S. 1, 4 (1951)). Presumed innocent until proven guilty, arrestees retain a "strong interest in liberty." *United States v. Salerno*, 481 U.S. 739, 750 (1987). Arresting and jailing a citizen is no small matter, and we expect law enforcement to exercise such power with care to protect this interest in liberty.

*Melancon*, 2025 WL 429977, at *6.

## CONCLUSION

It is therefore **ORDERED** that Defendant Brenna Bearden's Second Motion to Dismiss (Dkt. #16) and Defendant City of Frisco's Second Motion to Dismiss (Dkt. #17) are hereby **GRANTED**.

It is further **ORDERED** Plaintiff's 42 U.S.C. § 1983 claims against Defendant Brenna Bearden and the City of Frisco are **DISMISSED**.

It is further **ORDERED** that the Clerk is directed to **CLOSE** this civil action.

**IT IS SO ORDERED.**

**SIGNED this 1st day of June, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE